UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| STEPHEN AMES, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 3:20-cv-335-CHB |
| ) | |
| v. ) | |
| ) | **MEMORANDUM OPINION AND ORDER** |
| LOWE'S HOME CENTERS, LLC, ) | |
| ) | |
| Defendant. ) | |
| ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on Defendant Lowe's Home Centers, LLC's ("Lowe's") Motion for Summary Judgment [R. 25]. Plaintiff Stephen Ames responded in opposition [R. 29], and Defendant replied [R. 30]. The matter is now ripe for review. For the following reasons, the Court will deny Defendant's Motion for Summary Judgment.

## I.   Background

On March 30, 2019, Plaintiff Stephen Ames and his wife visited the Elizabethtown, Kentucky Lowe's store. [R. 25-2 (Ames Dep.), pp. 4–5[1]; R. 25-1, pp. 1–2] Plaintiff and his wife separated, and Plaintiff went to the lumber department in search of discounted or damaged roofing shingles. [R. 25-2 (Ames Dep.), p. 3–6; R. 25-1, pp. 1–2] Plaintiff owns goats and wanted to use the shingles as an abrasive material for a ramp so that the goats' hooves are trimmed as they traverse it.[2] [R. 25-2 (Ames Dep.), p. 6] In the lumber department, Plaintiff met

---

[1] For purposes of this Order, the Court references the page number that corresponds to the record entry at R. 25-2 and R. 29-1 rather than the page number of the underlying deposition transcript.
[2] Goats' hooves must be kept trim to avoid hoof problems, and rocky terrain decreases the need for trimming. *See* Katie Ockert, *Proper Goat Hoof Care*, MICH. STATE UNIV. (Sept. 12, 2019), https://www.canr.msu.edu/news/proper_goat_hoof_care.

a Lowe's employee who went by the name "Smitty"[3] and asked him if the store sold damaged shingles at a discount. *Id.* at 3. Smitty said, "Sure. Follow me." *Id.* Smitty led Plaintiff to an outside, fenced area of the store, where a pile of shingles was lying on the ground. *Id.* at 3, 6. These shingles were no longer in their packaging; instead, they were loose, as if one "just took a deck of cards and just sprayed them all out." *Id.* at 8–9. Smitty told Plaintiff to "[g]rab as many as you want." *Id.* at 3. Both—Smitty and Plaintiff—started to grab shingles to load into Plaintiff's flatbed cart. *Id.* ("He grabbed some. I grabbed some."). When Plaintiff grabbed part of a bundle of the loose shingles and attempted to lift the shingles, they stuck together and would not move. *Id.* at 9–10; [R. 29-1 (Ames Dep.), p. 5] As he attempted to lift, he heard and felt a pop in his back and experienced a sharp pain. [R. 25-2 (Ames Dep.), pp. 3, 14] Knowing that he had injured his back, Plaintiff stopped trying to lift the shingles. *Id.* at 3. Smitty loaded the rest of the shingles into the cart—about 2.5 bundles in total—and Plaintiff "hunched [his] way out of the store" with the shingles. *Id.* at 3, 10.

Plaintiff alleges that he sustained a serious back injury lifting the shingles, which kept him out of work for 23 days, cost $30,689.05 in medical expenses, and continues to affect him. [R. 1-3, pp. 5, 9] On February 22, 2020, he sued Defendant in Hardin Circuit Court, alleging that Defendant negligently breached its duty of care to him, which resulted in "permanent personal injuries, significant medical expenses, physical pain, mental and emotional suffering, diminution of enjoyment or quality of life, lost wages, and impairment of the ability to earn." [R. 1-1 (Complaint), ¶¶ 14–15] Defendant removed the case to this Court and filed a Motion for Summary Judgment on January 5, 2021. [R. 1; R. 25] Plaintiff filed a Response, and Defendant replied. [R. 29; R. 30] The Motion for Summary Judgment is ripe.

---

[3] Lowe's asserts that the employee's name is Kerlin Smith, and that Smith has no recollection of this event happening. [R. 25-1, p. 2 n.2]

## II. Standard of Review

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When determining a motion for summary judgment, a court must construe the evidence and draw all reasonable inferences from the underlying facts in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Lindsay v. Yates*, 578 F.3d 407, 414 (6th Cir. 2009). The court may not "weigh the evidence and determine the truth of the matter" at the summary judgment stage. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 265 (1986). The initial burden of establishing no genuine dispute of material fact rests with the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets its burden, the burden then shifts to the nonmoving party to produce "specific facts" showing a "genuine issue" for trial. *Id.* at 324. The Court "need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). Where "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the Court may treat that fact as undisputed. Fed. R. Civ. P. 56(e)(2).

A fact is "material" if the underlying substantive law identifies the fact as critical. *Anderson*, 477 U.S. at 248. Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* A "genuine" issue exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249. Further, such evidence creating a "genuine" issue must be suitable for admission into evidence at trial. *Salt Lick Bancorp v. FDIC*, 187 F. App'x 428, 444-45 (6th Cir. 2006).

### III. Discussion

Plaintiff makes a common law negligence claim against Defendant Lowe's. Under Kentucky law, "[t]he elements of a negligence claim are (1) a legally-cognizable duty, (2) a breach of that duty, (3) causation linking the breach to an injury, and (4) damages." *Patton v. Bickford*, 529 S.W.3d 717, 729 (Ky. 2016) (citations omitted). "Duty presents a question of law, whereas breach and injury are questions of fact for the jury to decide." *Id.* Causation, however, "presents a mixed question of law and fact." *Id.* Plaintiff asserts genuine issues of fact exist in this case precluding summary judgment – that is, that Defendant owed him a duty of care under premises liability law, that Lowe's caused an unreasonably dangerous condition (the shingles sticking together) "by failing to monitor this area of the store and the employee [] directing Ames to go ahead [and] attempt to lift the shingles by himself," and that he injured his back lifting the shingles, causing damages. *See* [R. 29][4]

"Beginning in 2010, the Kentucky Supreme Court has effected 'seismic' change in the Commonwealth's negligence law, at least relating to premises." *Greer v. Kaminkow*, 401 F. Supp. 3d 762, 770 (E.D. Ky. 2019) (quoting *Grubb v. Smith*, 523 S.W.3d 409, 415-21 (Ky. 2017) (Hughes, J.)[5]( as modified Aug. 24, 2017)); *see also Shelton v. Ky. Easter Seals Soc., Inc.*, 413 S.W.3d 901, 904 (Ky. 2013)(noting Kentucky's "slow, yet steady, progress to modernize our tort law and eliminate unfair obstacles to the presentation of legitimate claims"). Kentucky's highest

---

[4] Plaintiff also asserts that summary judgment is premature because discovery has not concluded. [R. 29, p. 4] Defendant counters that summary judgment is not premature because Plaintiff had adequate time to conduct discovery. [R. 30, p. 7] As explained below, even on the current record, the Court finds genuine issues of fact exist. The Court, therefore, will not address the parties' respective positions related to the status of discovery. Instead, the Court will direct the parties to raise any such issues separately, if needed.
[5] The *Grubb* opinion was split, 3–3, between Justice Hughes's lead opinion and Justice Venters's separate opinion. The quoted language in this Order comes from Part I of Justice Hughes's opinion, to which Justice Venters's separate opinion concurred—therefore constituting a majority of the Court. *Grubb*, 523 S.W.3d at 431.

court has made a "determined effort . . . to limit holdings, at trial or on appeal, that an obvious, risk-posing condition on the property is 'not unreasonable as a matter of law,' to those rare instances where they are justified." *Grubb*, 523 S.W.3d at 418. This Court recognized the shift where Judge Stivers noted Kentucky's negligence law "has evolved from a blunt question of a landowner's duty to a more nuanced analysis of breach and causation." *Wiley v. Sam's Club, Inc.*, No. 3:14-cv-54-GNS, 2015 WL 3687440, at *2 (W.D. Ky. June 12, 2015), *aff'd sub nom. Wiley v. Sam's E., Inc.*, 632 F. App'x 263 (6th Cir. 2016).

A. <u>Duty</u>

Defendant first argues it had no duty to stop Plaintiff from lifting the loose shingles; rather, it only has a duty "to remove or eliminate unreasonably dangerous conditions" and the shingles were not an unreasonably dangerous condition. [R. 25-1, p. 11] Plaintiff argues that all of Defendant's arguments in favor of summary judgment relate to the breach element for negligence, not the duty element, and are factual questions for the jury. [R. 29, pp. 3-6]

Kentucky tort law treats retail-store customers as business invitees in negligence suits based on premises liability. *Grubb,* 523 S.W.3d at 416; *Dunn v. Wal-Mart Stores E., Ltd. P'ship*, 724 F. App'x 369, 372 (6th Cir. 2018). "Generally speaking, a possessor of land owes a duty to an invitee to discover unreasonably dangerous conditions on the land and either eliminate or warn of them." *Shelton,* 413 S.W.3d at 909; *see also Dunn*, 724 F. App'x at 372. "Conversely, conditions on the land that are not unreasonably dangerous do not implicate the land possessor's duty of care, and thus injuries arising from such conditions cannot give rise to the possessor's liability." *Grubb*, 523 S.W.3d at 417.

In addition, a landowner is also subject to a universal duty of care. That is, "a land possessor is subject to the general duty of reasonable care." *Shelton*, 413 S.W.3d at 908. Stated

5

another way, "every person owes a duty to every other person to exercise ordinary care in his activities to prevent foreseeable injury." *Id.* (footnote omitted)(quoting *Grayson Fraternal Ord. of Eagles, Aerie No. 3738, Inc. v. Claywell*, 736 S.W.2d 328, 332 (Ky. 1987)); *see also Kendall v. Godbey*, 537 S.W.3d 326, 331 (Ky. Ct. App. 2017). This duty is separate and distinct from the "more specific duty associated with" premises-liability law. *Shelton*, 413 S.W.3d at 910. Kentucky courts, and federal courts applying Kentucky law, find that foreseeability is most always a fact specific analysis best suited for the jury. *Id.* at 904; *Greer*, 401 F. Supp. 3d at 776. Specifically, the *Shelton* Court directed that the foreseeability question was more appropriately a question of fact for the jury under the *breach analysis* (not to be mechanically applied under the duty analysis):

> The extent of foreseeable risk at the time of defendant's alleged negligence depends on the specific facts of the case . . . Thus, courts should leave such determinations to the trier of fact unless no reasonable person could differ on the matter . . . Accordingly, the foreseeability of the risk of harm should be a question normally left to the jury under the breach analysis.

413 S.W.3d at 913-14; *see also Kendall*, 537 S.W.3d at 331-32 (finding that *Shelton* "remove[d] foreseeability as a part of the duty analysis" and effectively made duty "a given element in negligence actions").

Without citing a single Kentucky case, Defendant advances that Kentucky courts impose no duty as a matter of law "to stop patrons from loading merchandise or loading merchandise unsafely onto a shopping cart." [R. 25-1, p. 7] This argument is factually and legally inapposite. First, the merchandise here (the shingles) was not in its normal, customary packaging. Rather, the shingles were located in a rear, exterior storage area, subject to the elements, and strewn on the ground like a deck of cards. [R. 25-2 (Ames Dep.), pp. 8-9] Further, Defendant's argument posits a situation where a customer takes it upon herself to load merchandise, without

encouragement from the store or its employees. This case confronts a different situation—where a store employee invites a customer to load the merchandise himself and where the merchandise is in disarray, outside its normal packaging, and exposed for an unknown time to heat and cold. [R. 25-2 (Ames Dep.), pp. 3, 8-9] Indeed, none of the cases cited by Defendant addresses a scenario where, as here, a store employee invited the customer to load similar merchandise. *See Ghaemmahami v. Wal–Mart Stores, Inc.*, 442 F. Supp. 2d 354, 355 (S.D. Miss. 2006); *Kroger Co. v. Smith*, 218 S.W.3d 359, 361 (Ark. Ct. App. 2005); *Mick v. Kroger Co.*, 224 N.E.2d 859, 860 (Ill. 1967); *Riddle v. Lowe's Home Centers, Inc.*, 802 F. Supp. 2d 900, 902 (M.D. Tenn. 2011); *Lytle v. Wal-Mart Stores, Inc.*, 827 S.W.2d 652, 653 (Ark. 1992). Further, Defendant misstates the facts, and without any citation to the record claims:

> Plaintiff's testimony makes clear that Smitty told Plaintiff he could have as many shingles as he wanted and then *Smitty started to load them onto Plaintiff's cart. Importantly, Smitty did not direct Plaintiff to lift the shingles and had already started to load Plaintiff's cart when Plaintiff himself tried to lift the shingles*.

[R. 25-1, p. 3 (emphasis added)]; *see also* [R. 30, p. 4, ¶¶ 4, 5] But a fair reading of Plaintiff's testimony, construed in the light most favorable to Plaintiff as this Court must do, fails to support Defendant's narrative that Smitty did not invite Plaintiff to load shingles on his own or that Smitty started to load the shingles first: "We walked in the back and there's a big pile just sitting on the ground. He just said, 'Grab as many as you want.' He grabbed some. I grabbed some." [R. 25-2 (Ames Dep.), p. 3]

Moreover, none of the cases cited by Defendant considered Kentucky law or the "seismic" change that occurred in premises-liability law post-2010. *Grubb*, 523 S.W.3d at 415-21 (opinion of Hughes, J.). To the extent Defendant implores the Court to establish a bright-line rule that a store never has a duty of care with respect to customers loading merchandise by themselves, the Court declines to do so given the unique facts of this case. Under Kentucky law,

determinations of foreseeable risk and negligence "depend[] on the specific facts of the case and cannot be usefully assessed for a category of cases; small changes in the facts may make a dramatic change in how much risk is foreseeable." *Shelton*, 413 S.W.3d at 913 (quoting *A.W. v. Lancaster Cty. Sch. Dist. 0001*, 784 N.W.2d 907, 917 (Neb. 2010)). Defendant fails even to acknowledge this standard, let alone present an argument for why the Court would be justified in creating a categorical absence-of-duty rule in this case, given the condition of the merchandise and Smitty's invitation to Plaintiff to load the merchandise himself. *See Grubb*, 523 S.W.3d at 418 (limiting categorical rules finding no duty as a matter of law "to those rare instances where they are justified").

This Court will heed the Kentucky Supreme Court's warning "not to short circuit . . . cases by early resort to the old-school type of 'no duty' ruling" that drove prior negligence jurisprudence. *Id.* at 416. The Court finds that Lowe's owed Plaintiff a duty of care as a matter of premises ownership and as a matter of universal duty.

B. Breach

The Court will next consider whether a jury could reasonably find that Lowe's breached its duty to Plaintiff. As outlined above, the breach question is factual and typically inappropriate for summary judgment. *Id.* at 421. The Sixth Circuit in *Dunn* recently noted: "The Kentucky Supreme Court has repeatedly and explicitly declared that . . . the unreasonableness and foreseeability of risk of harm is normally a question for the jury to determine in deciding whether the defendant breached its duty of care in all but the rarest of circumstances." 724 F. App'x at 374. The *Dunn* Court determined that the unreasonableness of the risk posed in that case by an uneven sidewalk expansion joint and the foreseeability of harm were questions of fact, not appropriate for summary judgment. *Id.* at 375. In reaching this decision, the *Dunn* Court

referenced numerous Kentucky cases holding that an unreasonable risk of harm "could be created by a 'simple curb' outside an emergency room (*McIntosh*), wires on the floor near a hospital bed (*Shelton*), ice in the parking lot of a hotel after a winter storm (*Carter*), the slipperiness of a wet hotel bathtub (*Goodwin*), and a small pothole between the pumps of a gas station (*Grubb*)." *Id.* at 374 (citing *Goodwin v. Al J. Schneider Co.*, 501 S.W.3d 894, 899 (Ky. 2016)).

Drawing all reasonable inferences in favor of the Plaintiff, as this Court must do, a rational jury could find that the unpackaged shingles, strewn about the ground like a deck of cards and left exposed to the elements, created an unreasonable and foreseeable risk of harm, resulting in Plaintiff's back injury. It is undisputed that the shingles were located on Lowe's property, that the shingles were outside their wrapping (or binding) and strewn about the ground, that they were exposed to the heat and/or cold (for how long is unknown), and that Smitty and Lowe's knew the condition of the shingles – indeed, they were located on Lowe's property and Smitty walked Plaintiff directly to the shingles pile, inviting him to "[g]rab as many as you want." [R. 25-2 (Ames Dep.), p. 3] Further, when a store employee instructs an invitee to encounter a dangerous condition on the premises and the invitee is injured by that dangerous condition, a jury may appropriately conclude that the invitee's injury was foreseeable. *See Schmidt v. Int'l Hotels Grp. Res., Inc.*, 850 F. Supp. 2d 663, 670 (E.D. Ky. 2012) ("If the hotel knew generally about the bad conditions and specifically about the danger at Entrance H, and yet sent Schmidt directly to that entrance, the ensuing harm arguably was foreseeable."); *Garrity v. Wal-Mart Stores E., Ltd. P'ship*, 288 F.R.D. 395, 406 (W.D. Ky. 2012).

In *Schmidt*, a hotel employee allegedly directed a conference attendee to exit the hotel to park her car and reenter via "Entrance H." 850 F. Supp. 2d at 664. The attendee slipped on some

9

ice on the sidewalk and fell while walking up to Entrance H. *Id.* The court held that summary judgment was inappropriate because the hotel knew that Entrance H was icy, that the attendee might be distracted while walking, and that she might not be familiar with the area outside of the hotel; nevertheless, the hotel instructed the attendee to walk to Entrance H.[6] *Id.* at 670. The court held that these factors made the attendee's risk of harm foreseeable enough that the case should go to a jury. *Id.* The court continued,

> A land possessor and invitee being on equal footing (so to speak) relative to an open and obvious danger is one thing. A possessor that knows an area is dangerous and yet tells an invitee to encounter the danger is a different matter. The hotel surely could foresee that a guest, unfamiliar with the premises, would trust and follow the hotel's entry advice, advice that later proved bad. The jury may blame [the guest] for some or all of the event, but it is the jury that must make the assessment.

*Id.* at 671.

Similarly, in *Garrity*, a Wal–Mart employee directed a customer to walk out of the tire department to the front of the store to return an item. 288 F.R.D. at 397. The customer slipped on black ice on the sidewalk between the tire department and the front of the store and fell. *Id.* This Court denied summary judgment, noting that the customer presented evidence that the store failed to clear the sidewalk of ice but still directed the customer to walk there. *Id.* at 406. This direction caused a foreseeable risk of harm to the customer. *Id.* ("Since a reasonable jury could conclude that Wal–Mart knew that the sidewalk had not been cleared and yet told Mr. Garrity to walk to the front of the store, summary judgment is not appropriate.").

---

[6] Both *Schmidt* and *Garrity* were decided after *Kentucky River Medical Center v. McIntosh*, 319 S.W.3d 385 (Ky. 2010), which began Kentucky's abrogation of the "open and obvious" doctrine, but before *Shelton* and subsequent cases solidified and expanded that abrogation. *Shelton*, 413 S.W.3d at 904. Accordingly, both cases offered analysis under both the "open and obvious" doctrine as well as general foreseeability principles. *Schmidt*, 850 F. Supp. 2d at 669; *Garrity*, 288 F.R.D. at 405. Given the additional limits on the "open and obvious" doctrine since those cases were decided, the Court focuses on their foreseeability analysis.

In *Greer*, 401 F. Supp. 3d at 775, 780, the court found reasonable minds could differ on the unreasonable-risk question where the plaintiff-housecleaner was injured taking out the trash from a home owned by the defendants. There, the defendants knew that the house occupants, rather than putting their garbage in a bag and placing it in the trash bin, would "open the internal kitchen door . . . and simply throw a full trash bag (or one of many discarded delivery boxes) onto the garage floor," leaving the trash and boxes in a heap on the floor. *Id.* at 779-80. The Court reasoned:

> a jury question exists regarding whether the Owners exercised "reasonable care" to "prevent foreseeable injury" when [an owner] dispatched [plaintiff] to clean [the house], considering the loose refuse with which [the] home occupants had littered the garage and the potentiality that such an item(s) could end up in [plaintiff's] walking path as she toted trash to the street.

*Id.* at 780.

Like the sidewalk ice in *Schmidt* and *Garrity*, or the trash pile in *Greer*, a rational jury could find that the unpackaged shingles, spread out on the ground like a "deck of cards" and exposed to the elements, posed an unreasonable, foreseeable risk of harm to store customers, like Plaintiff. [R. 29-1 (Ames Dep.), p. 3-5]; *Schmidt*, 850 F. Supp. 2d at 670-71; *Garrity*, 288 F.R.D. at 406-07; *Greer*, 401 F. Supp. 3d at 780. Further, like the employees in *Schmidt* and *Garrity*, and the homeowner in *Greer*, Smitty invited Plaintiff to encounter that condition without any warning by telling Plaintiff to "[g]rab as many [shingles] as you want." [R. 25-2 (Ames Dep.), p. 3]; *Schmidt*, 850 F. Supp. 2d at 664; *Garrity*, 288 F.R.D. at 397; *Greer*, 401 F. Supp. 3d at 767. On these facts, a jury could find that Plaintiff's risk of harm from picking up the shingles was foreseeable. Defendant's argument that Smitty did not have "authority or duty" to direct Plaintiff to pick up shingles or prevent Plaintiff from picking up shingles, [R, 30, p. 4, ⁋ 9], is without merit. *See Schmidt*, 850 F. Supp. 2d at 670–71; *Garrity*, 288 F.R.D. at 406-07; *Greer*, 401 F.

11

Supp. 3d at 780. That is, Defendant "surely could foresee that [Plaintiff], unfamiliar with the premises, would trust and follow [Smitty's shingles] advice, advice that later proved bad. The jury may blame [Plaintiff] for some or all of the event, but it is the jury that must make the assessment." *Schmidt*, 850 F. Supp. 2d at 671.

Defendant asserts that no evidence in the record shows the shingles were an unreasonably dangerous condition, but even if they were, the presence of Lowe's employee Smitty (who could have loaded the shingles onto Plaintiff's cart) eliminated the danger. [R. 25-1, pp. 12–13; R. 30, pp. 11–15] Defendant also argues that Lowe's breached no duty to Plaintiff and caused no injury because Plaintiff, a former roofer, who knew the dangers posed by unbundled shingles exposed to the elements, failed to "inspect, test, or otherwise check the shingles" before picking them up. [R. 25-1, p. 3; R. 30, pp.12-15] While these arguments may be relevant to the ultimate unreasonable risk/foreseeability analysis, it is the jury's job to evaluate the facts and determine whether Lowe's breached its duty.

As explained above, Plaintiff *did* present evidence of the unreasonably dangerous condition posed by the shingles. [R. 25-2 (Ames Dep.), pp. 8-9 (the shingles were "busted open bundles, leaned over top of each other like, just took a deck of cards and just sprayed them all out"); *id.* at p. 10 ("it was just – it was a solid pile of tar basically, it just didn't [budge]"); *id.* at 6 ("They were . . . they were outside of the main building in their back, the fenced area.")] Similarly, Plaintiff also presented evidence that Defendant failed to warn of or eliminate this condition—namely, Defendant neither separated the shingles nor advised Plaintiff that the shingles might be stuck together. [R. 29-1 (Ames Dep.), pp. 5-6] Instead, Defendant's employee led Plaintiff to the shingles and invited him to lift them himself – a fact this Court must take as true for purposes of this Motion, and a fact that Defendant repeatedly glosses over. [R. 25-2

(Ames Dep.), p. 3] In sum, there is evidence in the record such that a reasonable jury could find that Defendant owed a duty to Plaintiff—whether that was warning of or eliminating an unreasonably dangerous condition, or preventing a foreseeable risk of harm—and that Defendant breached that duty.

Further, like the customer in *Garrity*, the fact that Plaintiff "had alternative options" (such as letting Smitty load the cart) does not change the calculus that the injury was foreseeable to Defendant. *See Garrity*, 288 F.R.D. at 406. Nor does the allegation that Plaintiff, as a former roofer, was aware of the danger posed by the pile of shingles. As the *Dunn* Court reasoned:

> the obviousness of such a risk-posing condition is nothing more than a circumstance that the trier of fact can consider in assessing the fault of either party. "[A]n obvious risk-posing condition on the property can be unreasonable if, despite the obviousness, the property possessor can still anticipate someone being injured by it."

724 Fed. App'x at 374 (*quoting Grubb*, 523 S.W. 3d at 419)(internal citations omitted); *see also Schmidt*, 850 F. Supp. 2d at 671("a jury must determine whether Holiday Inn had 'reason to expect that [the hotel guest would] proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk.'") (quoting *Restatement (Second) of Torts § 343A); Garrity*, 288 F.R.D. at 405-06 (finding the risk posed by an icy sidewalk foreseeable even though the customer could have chosen to walk a different way to the front of the store; it was enough that "the advantages of getting to the front of the store outweighed the apparent risks. . . The fact that [the customer] had alternative options of walking on the cleared parking lot or making the returns at another time does not change this fact.").

.         Finally, *Grubb* outlined a couple of narrow exceptions to the general rule that juries must assess foreseeability, reasonable care, and ultimately breach; none apply here. 523 S.W.3d at

418. First, the public policy exception for "a frequently recurring type of risk-creating condition be deemed not unreasonable" is not implicated. Second, for the reasons already covered, this case does not fall into the "rare instances" where the plaintiff was clearly solely responsible for his injury, or where the "risk-creating condition on the property" could not have been "corrected by any means" or that it was "beyond dispute that [the owner did] all that was reasonable." *Id.* In sum, the questions related to the unreasonableness of the risk posed by the pile of shingles, the foreseeability of harm to Plaintiff, whether Plaintiff contributed to his injuries, whether Lowe's eliminated the risk or otherwise breached its duty of care to Plaintiff are all fact questions uniquely fit for the jury.

C. Causation[7]

Finally, Defendant asserts that, even if Lowe's breached its duty to Plaintiff, no evidence in the record shows the breach caused Plaintiff's injury. [R. 25-1, p. 13; R. 30, pp. 14–15] "Causation presents a mixed question of law and fact," consisting of "but-for" causation and proximate causation. *Patton*, 529 S.W.3d at 729–30. Defendant states that "Plaintiff does not establish how [Smitty's indicating the shingles were safe to lift] caused his injuries." [R. 30, pp. 14–15] This argument simply does not find support in the record. Plaintiff has demonstrated that a reasonable jury could find causation by showing that Smitty's invitation to help load the cart caused him to try to lift the shingles, which caused his immediate back injury. [R. 25-2 (Ames Dep.), pp. 3, 10, 14] A reasonable jury could find that, if Defendant breached its duty in inviting Plaintiff to lift the unpackaged shingles, that breach caused Plaintiff's injury.

---

[7] Defendant made no argument on the fourth element of negligence – damages – and the Court finds there are disputed issues of fact on that element as well.

### IV. Conclusion

For the reasons discussed above, genuine disputes of material fact remain. Therefore, summary judgment is inappropriate. The Court being otherwise sufficiently advised,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment [**R. 25**] is **DENIED**.

This the 8th day of September, 2021.

*Claria Horn Boom*
CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY